**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**Richard E. Lanham,**
**Individually and on behalf**
**of all others similarly situated,**

**Plaintiffs,**

**vs.**

**VOLKSWAGEN GROUP OF**
**AMERICA, INC., a New**
**Jersey Corporation,**

**Defendant.**

**CASE NO.**  3:15-cv-13507_____

**JUDGE** _____

**COMPLAINT**

Plaintiff Richard E. Lanham, individually and on behalf of the other members of the below-defined statewide class he seeks to represent (collectively, the "Class," unless otherwise identified herein), for his Class Action Complaint (the "Complaint") alleged against Defendant Volkswagen Group of America, Inc., upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, states as follows:

**NATURE OF THE CASE**

1.      Once growing in popularity on American roads in the 1970s and early 1980s, diesel passenger cars had all but disappeared as we moved into the new millennium because of tighter emissions standards required by the federal Clean Air Act and the laws of many states. However, beginning in 2009, Volkswagen introduced what it marketed as a new breed of diesel

cars powered by its TDI (Turbo-charged Direct Injection) "CleanDiesel" engine.  Volkswagen proclaimed and advertised that this new engine created enhanced power and fuel economy while at the same time meeting or beating all emissions standards.  Consumers could have the best of all worlds with VW's "CleanDiesel" – as long as they were willing to pay several thousand more dollars for the upgrade.

2.      But "CleanDiesel" ended up being a marketing misnomer built on deception of the highest order.  You see, VW had not designed a cleaner diesel engine:  instead, they had developed sophisticated software that allowed their engine to detect when it was being tested for emissions, in which case the software would activate full emissions controls on the engine, allowing it to pass the test.  At all other times, however, when the "CleanDiesel" was not being tested, it would operate in a different mode – one that allowed greater power and fuel efficiency, but also emitted nitrogen oxides (NOx) at up to 40 times the standard allowed under U.S. laws and regulations.  This software that Volkswagen developed and used is termed a "defeat device" pursuant to the Clean Air Act.  In other words, it's a sophisticated form of cheating.

3.      NOx pollution contributes to the components of "smog" – nitrogen dioxide, ground-level ozone and fine particulate matter – all of which carry serious health risks such as asthma attacks and other respiratory illnesses.  Ozone and particulate matter exposure have been linked to premature death due to respiratory and cardiovascular failures.  Children, the elderly, and those with pre-existing illnesses are at greater risk.

4.      Volkswagen explicitly and aggressively marketed its CleanDiesel engine as a new breed of diesel technology – extraordinarily clean, EPA certified in all 50 states, fuel efficient, and powerful.  And VW's marketing worked, allowing it to place half a million of these vehicles on American roads.  Recently, however, VW's software "cheat" was uncovered through a West

Virginia University study that called CleanDiesel emission results into question.  Volkswagen's first reaction was to continue its deception, complaining that the WVU study was skewed.  A few days ago, however, Volkswagen finally came clean by admitting that its CleanDiesel engine was rigged with deceptive software.

5.      Without its deceptive software, Volkswagen would not have been able to sell a single "CleanDiesel" vehicle in West Virginia or the United States.  Volkswagen's conduct violates the federal Clean Air Act as well as EPA rules and regulations, and it violates West Virginia statutory and common law including the West Virginia Consumer Credit and Protection Act.  It breaches express and implied warranties under West Virginia law, and further amounts to fraud and unjust enrichment for Volkswagen.  Plaintiff therefore brings this action on behalf of himself and a proposed West Virginia class to obtain both actual and punitive damages, and to enjoin Volkswagen from continuing to deceive customers.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 members in the proposed statewide Class; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and diversity exists because Plaintiff and the members of the proposed Plaintiff Class are citizens of West Virginia, whereas Defendant is organized under the laws of New Jersey with a principal place of business in Virginia.

7.      This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because it conducts substantial business in this District, and some of the actions giving rise to the Complaint took place in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendants have caused harm to class members residing in this District. Plaintiff resides in this District and purchased his affected vehicle in this District. Defendant has marketed, advertised, sold and leased the affected vehicles within this District.

## PARTIES

9.     Plaintiff Richard E. Lanham is a citizen of West Virginia and a resident of Hurricane, which is in Putnam County, West Virginia. Plaintiff owns a 2014 Volkswagen TDI Diesel Jetta and was injured as a result of Defendant's unlawful conduct.

10.     Defendant Volkswagen Group of America, Inc., is a New Jersey corporation with its headquarters and principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia.

## STATEMENT OF FACTS

11.     Volkswagen designs, manufactures, markets, distributes and warrants vehicles in the United States under the Volkswagen and Audi brand names. Volkswagen is the world's largest automaker with diesel engines accounting for over 20 percent of its sales.

12.     This case involves roughly 500,000 model year 2009-2015 Volkswagen and Audi vehicles sold in the United States and equipped with a 2.0L TDI CleanDiesel engine. As used in this Complaint, "Defective Vehicles" refers to all vehicles purchased or leased in the United States containing a 2.0L diesel engine manufactured by Volkswagen that have been subject to any (regional or national) warning or recall, including, but not limited to, the following vehicles: 2009-2015 VW Diesel Jetta; 2009-2015 VW Diesel Beetle; 2009-2015 VW Diesel Golf; 2009-

2015 VW Diesel Passat; and 2009-2015 Audi A3 Diesel.  Discovery may reveal additional models and years that should be included as "Defective Vehicles".

13.     The term "Defective Vehicles" also includes all vehicles purchased or leased in the United States that have diesel engines manufactured by Defendant Volkswagen that are recalled at any point after the filing date of this Complaint for a reason related to emissions.

14.     The U.S. Government, through its Environmental Protection Agency ("EPA"), has passed and enforced laws designed to protect its citizens from pollution, particularly those chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

15.     The Defendant intentionally breached U.S. laws, EPA regulations and West Virginia law by selling cars in the United States and West Virginia that purposefully evaded federal and West Virginia laws.  As summarized by Cynthia Giles, Assistant Administrator for EPA's Office of Enforcement and Compliance: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."

16.     The EPA issued a Notice of Violation against the Volkswagen that details how the Defendant used sophisticated software in its CleanDiesel engines that could detect when the vehicle is undergoing emissions testing and then turn on full emissions controls only during the test.  However, at all other times, the CleanDiesel engine operates in a normal "non-testing" mode in which emissions controls are suppressed, allowing the engine to operate with substantially enhanced power and fuel efficiency, but with dramatically increased emissions – up to 40 times the amount of NOx as in testing mode (far above the EPA limit).

17.     The Clean Air Act has strict emissions standards for vehicles and requires manufacturers to certify to the EPA that its vehicles sold in the United States meet applicable

federal emissions standards to control air pollution.  The above-described Volkswagen software is an illegal "defeat device" as defined in and prohibited by the Clean Air Act and its regulations. 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1809.

18.     Every vehicle sold in the U.S. must be covered by an EPA certificate of conformity.  Volkswagen applied for and obtained a certificate of conformity, but it failed to reveal its "defeat device" software in its application.  Vehicles equipped with known "defeat devices" cannot be certified.  *See* EPA Circular No. 24: *Prohibition on us of Emission Control Defeat Devices* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86.1809 and 86.1854-12(a)(3)(ii).

19.     By manufacturing and selling "CleanDiesel" cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act and its regulations, and further defrauded its customers, breached its contracts, violated warranties, and engaged in unfair and deceptive practices under West Virginia (and federal) law.

20.     Volkswagen has charged a substantial premium for the Defective Vehicles.  For instance, the 2015 S model Jetta has a base price of $18,780 compared to a base price of $21,640 for the 2015 S model TDI CleanDiesel Jetta – a price premium of $2860.  For higher trim models, the discrepancy can be greater.  The highest level gas engine 2015 Jetta SE has a starting MSRP of $20,095 compared to the TDI CleanDiesel SEL Jetta's $26,410, amounting to a $6315 premium for CleanDiesel.

21.     These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing.  The table below details the price premiums for each base, mid-level and top-line trims for each relevant model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

22.     The EPA has ordered Volkswagen to recall the Defective Vehicles and repair them so that they comply with EPA emission requirements during normal operations. Volkswagen will not, however, be able to make the Defective Vehicles compliant without substantially degrading their performance characteristics, including their horsepower and fuel efficiency.  Therefore, even if Volkswagen can make Class members' Defective Vehicles EPA compliant as required by the recall, Class members will suffer actual harm and damages because their vehicles will not perform as they did when advertised and purchased.  This results in a diminution in value of every Defective Vehicle and will cause owners of these vehicles to pay more for fuel when using the vehicles.

23.     On September 20, 2015, Volkswagen finally admitted that the EPA allegations were true and that it used a "defeat device" in the Defective Vehicles.  VW's CEO, Martin Winterkorn, stated:  "I personally am deeply sorry that we have broken the trust of our customers and the public."

24.     As a result of Volkswagen's unfair, deceptive and/or fraudulent business practices, and its failure to disclose that the Defective Vehicles emit 40 times the allowed levels

of certain contaminants under normal operating conditions, the owners and/or lessees of the vehicles have suffered losses in money and/or property.

25.     Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defective Vehicles, they either (1) would not have purchased or leased the vehicles, or (2) would have paid substantially less for the vehicles.  Moreover, if Volkswagen recalls the Defective Vehicles and makes the necessary repairs to achieve EPA compliance, the CleanDiesel engine will suffer huge losses in performance and fuel efficiency, further diminishing the value of the vehicle and causing continuous increased fuel costs for Plaintiff and Class members.  These losses in performance and fuel efficiency mean that the Defective Vehicles will be worth substantially less in the marketplace and upon resale.

26.     Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Defective Vehicles in West Virginia.  Plaintiff seeks actual and punitive damages, and equitable and injunctive relief against the Defendant Volkswagen for its conduct surrounding the "defeat device" software related to its CleanDiesel engine.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.  Fraudulent Concealment

27.     Upon information and belief, Defendant Volkswagen knowingly, actively and fraudulently concealed its "defeat device" software and the facts alleged herein throughout the time period relevant to this action.

28.     Volkswagen falsely represented that the Defective Vehicles complied with EPA emissions standards and that it was a reputable manufacturer whose representations could be trusted when in fact it was cheating on emissions testing of its CleanDiesel engines throughout the time period relevant to this action.

29.     Defendant designed its "defeat device" and fraudulently concealed its existence well before Plaintiff and Class Members purchased the Defective Vehicles, and continued this concealment throughout the relevant time period for this action.   Defendant ceased this fraudulent concealment and notified Plaintiff, Class Members, and the public only a few days ago.

30.     Therefore, any applicable statute of limitation has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein.

**B. Discovery Rule Tolling**

31.     Within the time period of any applicable statutes of limitations, Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing true emissions performance of the Defective Vehicles.

32.     Plaintiff and Class Members could not have discovered Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device" software.   It required expertise from West Virginia University's Center for Alternative Fuels, Engines & Emissions to unearth the Defendant's deception, which was grounded in sophisticated computer software tied to the CleanDiesel engine.   Even then, Volkswagen continued to conceal its scheme and denied the defect, claiming that the WVU study was flawed.

33.     Only after the EPA applied its additional expertise and authority did Volkswagen admit to and reveal its "defeat device" scheme.

34.     Throughout the time period relevant to this action, Plaintiff and other Class Members did not discover or know of any facts that would cause a reasonable person to suspect that the Defective Vehicles failed to comply with EPA emissions standards or that Volkswagen

was engaged in deception with respect to emissions testing. These facts became available only shortly before this action was filed.

35.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims related to the Defective Vehicles.

**C. Estoppel**

36.     Defendant intentionally and knowingly concealed the actual quality of emissions from the CleanDiesel engines in the Defective Vehicles.

37.     Defendant had a continuous duty to disclose to Plaintiff, Class Members and the EPA the actual quality of emissions from the Defective Vehicles, and furthermore had a continuous duty to admit that it had engaged in an illegal scheme to defeat emissions testing and thereby evade EPA emissions standards.

38.     Therefore, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all others similarly situated. Plaintiff seeks to represent a class (the "Class") defined as follows:

> All current and former owners and lessees of a Defective Vehicle (as defined herein) in West Virginia.

40.     Excluded from the Class are the Defendant (as well as Defendant's employees, affiliates, officers, directors, and franchised dealers); any individuals who experienced physical injuries as a result of the defects at issue in this litigation; and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

41.   **Numerosity and impracticality of joinder**.  The members of the Class are so numerous that joinder of all members is impractical.  Thousands of Class members purchased or leased class vehicles.   The members of the Class are easily and readily identifiable from information and records in Defendant's possession, custody, or control.

42.   **Commonality and predominance.**  There are common questions of law and fact that predominate over any questions affecting the individual members of the Class.  Common legal and factual questions include, but are not limited to:

   a.   whether Defendant engaged in the conduct alleged herein;

   b.   whether Defendant designed, advertised, marketed, distributed, sold, leased or otherwise placed Defective Vehicles into the stream of commerce in the United States and West Virginia;

   c.   whether the Defendant's CleanDiesel engine in the Defective Vehicles contains a defect that fails to comply with EPA requirements;

   d.   whether the CleanDiesel engine in Defective Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defective Vehicles;

   e.   whether Defendant knew about the "defeat device" and, if so, how long Defendant has known;

   f.   whether Defendant's conduct violates consumer protection statutes, warranty laws and other laws asserted herein;

   g.   whether Plaintiff and other Class members overpaid for their Defective Vehicles;

   h.   whether Defendant's actions directly and proximately caused the Class's damages;

   i.   whether Defendant had a duty to disclose the defects to Plaintiff and the other Class members;

   j.   whether Defendant engaged in fraud, fraudulent concealment, and made fraudulent representations to the public;

   k.   whether Plaintiff and the other Class members are entitled to damages and other monetary relief, including punitive damages, and if so, in what amount; and

l.   whether Plaintiff and the other Class members are entitled to equitable relief or other relief, and the nature of such relief.

43.   **Typicality.**   Plaintiff's claims are typical of the claims of the other Class members because Plaintiff and the other Class members purchased vehicles that contain the same defective parts.   Neither Plaintiff nor the other Class members would have purchased the Defective Vehicles had they known of the defects in the vehicles.   Those defects also pose an unreasonable risk of harm to Plaintiff and the other Class members.   Plaintiff and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.   Plaintiff's claims are based upon the same legal theories as the claims of the other Class members.

44.   **Adequacy.**   Plaintiff will fully and adequately protect the interests of the other members of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation.   Neither Plaintiff nor his counsel has interests that conflict with the interests of the other Class members.

45.   **Declaratory and Injunctive Relief.**   Defendant has acted or refused to act on grounds generally applicable to Plaintiff and to the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

46.   **Superiority.**   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: it is economically impracticable for members of the Class to prosecute individual actions; prosecution as a class

action will eliminate the possibility of repetitious and redundant litigation, and of inconsistent or contradictory judgments; and, a class action will enable claims to be handled in an orderly, efficient and expeditious manner. No unusual difficulties are likely to be encountered in the management of this class action, and a class action provides economies of scale and the consistency of comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fraudulent Concealment

47.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

48.     Plaintiff brings this Claim individually and on behalf of the Class.

49.     Defendant intentionally concealed material facts from Plaintiff, the other Class members, the public, and the EPA. Defendant intentionally and grossly defrauded and misled the EPA and consumers, including all Class members, concerning the true emissions produced by the misnamed "CleanDiesel" engines in the Defective Vehicles. Defendant Volkswagen accomplished this fraud and concealment thereof by installing "defeat device" software in the Defective Vehicles that allowed the vehicles to operate in a low emission test mode only during emissions testing; at all other times, during normal operation, the Defective Vehicles would emit grossly larger quantities of noxious contaminants, often 40-fold over applicable standards.

50.     Plaintiff and Class members reasonably relied on Volkswagen's false representations. Plaintiff and Class members had no way of discerning that Volkswagen's representations were false and misleading because VW's "defeat device" software was extremely sophisticated technology. Plaintiff and Class members did not and could not unravel Volkswagen's deception on their own. In fact, it took years before the academic engineering

community – specifically a research team at WVU's Center for Alternative Fuels, Engines & Emissions – detected Volkswagen's cheat, and when this happened, Volkswagen continued to conceal its fraud until the EPA applied its expertise and leverage.

51. Volkswagen's intentional and sophisticated scheme to design and install "defeat device" software on all the Defective Vehicles for the sole purpose of cheating on emissions testing, and then continuing and concealing this boldly fraudulent scheme through 7 model years, demonstrates a VW culture that emphasized sales and profits over integrity. Furthermore, it demonstrates a callous disregard of U.S. law, EPA regulations, the public health, and VW customers, including Class members.

52. On information and belief, Volkswagen necessarily took steps to ensure that its employees did not reveal the details of its fraudulent scheme to regulators or customers, including Plaintiff and Class members.

53. Volkswagen's false representations were material to consumers, including Plaintiff and the Class, because the representations substantially affected the performance and market value of the Defective Vehicles. Plaintiff and Class members had paid for *clean* diesel cars, not what turned out to be "CleanDiesel" cars that used a cheat to make them appear clean.

54. Volkswagen had a duty to disclose its emissions scheme on the Defective Vehicles. Volkswagen had developed the deceptive scheme and had complete knowledge of it, and Volkswagen knew that its customers, including the Plaintiff and Class members, did not know about and could not reasonably discover the scheme. Volkswagen also had a duty to disclose the scheme because it continued to make affirmative representations about the quality of the Defective Vehicles with respect to emissions, including marketing the Defective Vehicles as "CleanDiesel" cars, or cars with clean diesel engines; these VW representations were misleading,

deceptive and incomplete without disclosure of the additional facts set forth above regarding the "defeat device" software and the true emissions levels on Defective Vehicles during normal operation.

55.     Volkswagen actively concealed and suppressed material facts concerning the actual emissions levels of the Defective Vehicles (and the software designed to cheat on emissions testing) to pad its profits and avoid the perception that the Defective Vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the VW brand's image and cost the company money, and Volkswagen engaged in this fraudulent concealment at the expense of Plaintiff and the Class members.

56.     On information and belief, the Defendant still has not made full and adequate disclosures and continues to defraud Plaintiff and Class members by concealing material information regarding the emission qualities of the Defective Vehicles.

57.     Plaintiff and Class members were not aware of the concealed material facts referenced above, and they would not have acted as they did if they had known of the concealed facts.  They would not have purchased purportedly "clean" diesel cars and/or would not have continued to drive their heavily polluting vehicles, or would have taken other steps.  Plaintiff's and Class members' actions were reasonable and justified because Volkswagen was in exclusive control of the material facts, and such facts were neither known or knowable to the public, Plaintiff, or Class members.

58.     Because of the Defendant's fraudulent concealment of material facts, Plaintiff and Class members have sustained substantial damages.  They own Defective Vehicles that are severely diminished in value as compared to the vehicles as advertised and marketed upon date of purchase or lease.  Had Plaintiff and Class members known about Volkswagen's emissions

scheme, they would have paid less for their vehicles or would not have purchased or leased them at all.  Moreover, the Defective Vehicles either cannot be repaired to comply with EPA emissions standards, or if they can be made compliant, their performance, fuel efficiency and longevity will be substantially compromised.  Therefore, the Defective Vehicles will never have the qualities that the Plaintiff and Class members bargained for and thought they purchased from Volkswagen, and the market value of the Defective Vehicles has been irrevocably and substantially diminished.

59.     Therefore, Volkswagen is liable to Plaintiff and Class members for damages in an amount to be proven at trial.  Moreover, because Volkswagen acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiff and Class members, Volkswagen's conduct warrants punitive damages in an amount sufficient to deter such conduct in the future, as determined at trial.

**SECOND CLAIM FOR RELIEF**
**Violation of the West Virginia**
**Consumer Credit and Protection Act**
**(West Virginia Code § 46A-6-101, *et seq.*)**

60.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

61.     Plaintiff may bring this Claim individually and on behalf of the Class.

62.      Plaintiff intends to assert a claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WV Code § 46A-6-104.  In satisfaction of WV Code § 46A-6-106(c), Plaintiff will inform Defendant in writing and by certified mail, return receipt requested, of Defendant's violation of

the WVCCPA.  Plaintiff may amend this Complaint to assert claims under the WVCCPA once Defendant's statutory opportunity to make a cure offer has expired.

63.     This and the three preceding paragraphs are included for the purpose of notice only and are not intended to assert a claim under the WVCCPA at this time.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
### West Virginia Code § 46-2-314

64.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

65.     Plaintiff brings this Claim individually and on behalf of the Class.

66.     Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under West Virginia Code §§ 46-2-104(1) and 314(1).

67.     The Defective Vehicles are and were at all relevant times "goods" within the meaning of West Virginia Code §§ 46-2-105(1) and 314(2).

68.     A warranty that the Defective Vehicles were in merchantable condition and fit for the ordinary purposes for which cars are used was implied by law pursuant to West Virginia Code § 46-2-314.

69.     The Defective Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used for the reasons specified above and below.

70.     Defendant was provided notice of the relevant defects by its own knowledge of these issues, by their own development of the "defeat device" software, by the WVU study, by communications with the EPA, by the instant Complaint, and by numerous press releases and other communications before or within a reasonable amount of time after issues related to the

emissions of the Defective Vehicles became public.  Additional notice would be futile because there is no effective repair for the defect that will maintain the performance qualities (including horsepower and fuel efficiency) of the Defective Vehicles.

71.     Plaintiff and Class members have had sufficient direct dealings with either the Defendant or their agents (dealerships) to establish privity of contract between Plaintiff and Class members, on the one hand, and Defendant, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between the Defendant and its dealers. Specifically, the Plaintiff and the Class members are the intended beneficiaries of Defendant's implied warranties with their dealers. Volkswagen dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff's and Class members' Defective Vehicles spew noxious emissions that constitute a substantial danger to public health and therefore are dangerous instrumentalities.

72.     As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### Violation of the Consumer Protection – New Motor Vehicle Warranties
### (West Virginia "Lemon Law")
### West Virginia Code § 46A-6A-1 *et seq.*

73.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     Plaintiff brings this Claim individually and on behalf of the Class.

75.     The Class members who purchased or leased the Defective Vehicles in West Virginia are "consumers" within the meaning of West Virginia Code § 46A-6A-2(1).

76.     Defendant is a "manufacturer" of the Defective Vehicles within the meaning of West Virginia Code § 46A-6A-2(2).

77.     The Defective Vehicles are "motor vehicles" as defined by West Virginia Code § 46A-6A-2(4).

78.     Additional notice of the defect from the consumer to the manufacturer pursuant to W.Va. Code §§ 46A-6A-3(a) and 5(c) is not required since the EPA has notified Volkswagen on behalf of the consumers through the recall process, and in fact the Defendant is required by federal law to notify the Class members of the defect.  Moreover, additional notice would be futile because there is no effective repair for the defect that will maintain the performance qualities (including horsepower and fuel efficiency) of the Defective Vehicles.

79.     The emissions defect in the Defective Vehicles existed from the date of the original sale of the new vehicle to the consumer but could not be detected by a reasonable consumer exercising reasonable care and diligence.  Therefore, applicable express warranties for the Defective Vehicles containing the "defeat device" software would be extended.  Further extension of the express warranty period is now required because of the difficulties Volkswagen may have in executing a massive recall of approximately 500,000 Defective Vehicles in the United States (along with an additional estimated 11.5 million vehicles worldwide).

80.     As a direct and proximate result of Defendant's breaches of their duties under West Virginia's Lemon Law, the Class members received goods whose defect substantially impairs their value to the Class members. The Class has been damaged by the diminished market

value of the vehicles along with the compromised functioning and/or non-use of their Defective Vehicles.

81.     The Defendant has a duty under §46A-6A-3 to make all repairs necessary to correct the defect herein described, so as to bring the Defective Vehicles back into conformity with all written warranties. In the event that the Defendant cannot affect such repairs, it has a duty to replace each Defective Vehicle with a comparable new motor vehicle that conforms to the warranty.

82.     As a result of Defendant's breaches, the Plaintiff and the Class are entitled to the following:

   a.  Revocation of acceptance and refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of the new motor vehicle, or if there be no such revocation of acceptance, damages for diminished value of the motor vehicle;

   b.  Damages for the cost of repairs reasonably required to conform the motor vehicle to the express warranty;

   c.  Damages for the loss of use, annoyance or inconvenience resulting from the nonconformity, including, but not limited to, reasonable expenses incurred for replacement transportation during any period when the vehicle is out of service by reason of the nonconformity or by reason of repair; and

   d.  Reasonable attorney fees.

W.Va. Code § 46A-6A-4(b)(1)-(4).

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

83.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

84.     Plaintiff brings this Claim individually and on behalf of the Class.

85.     Plaintiff and the Class unknowingly conferred a benefit upon the Defendant by paying for Defective Vehicles which were, in fact, out of compliance with EPA emissions regulations and substantially dangerous to the public health.  Plaintiff and the Class bargained and paid for vehicles advertised and marketed as a new breed of cars whose "CleanDiesel" engines could deliver unprecedented horsepower and fuel efficiency for a diesel engine with low emissions well below EPA standards.

86.     In fact, the Defective Vehicles could only satisfy EPA emissions standards because of nearly undetectable cheat software that has finally been exposed and admitted by Volkswagen.  When Volkswagen makes the repairs required by the EPA to bring the Defective Vehicles within emissions guidelines, the Defective Vehicles' power, performance and fuel efficiency will suffer dramatically, and Plaintiff and Class members will retain vehicles far inferior to those for which they originally paid Volkswagen.

87.     Allowing Volkswagen to retain all of the benefits that Plaintiff and Class members originally conferred upon Volkswagen (the purchase price or lease payments) would be inequitable and result in the unjust enrichment of the Defendant.

88.     Defendant has been unjustly enriched at the expense of Plaintiff and the Class, and as a matter of equity, Defendants should be required to disgorge the unjust enrichment to make Plaintiff and the Class whole in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.     An order certifying the proposed Class, and designating Plaintiff as the named representatives of the Class, and designating the undersigned as Counsel for the Class;

b.     A declaration that the "defeat device" software in Defective Vehicles is illegal and that the Defective Vehicles are defective;

c.  A declaration that the Defendant is financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

d.  An order enjoining the Defendant to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendant to permanently, expeditiously, and completely repair the Defective Vehicles to bring them into compliance with EPA emissions standards;

e.  An award to Plaintiff and Class members of compensatory and exemplary damages, and statutory penalties, including interest, in an amount to be proven at trial, including but not limited to damages for (1) Plaintiff's and Class members' overpayment for vehicles with a major hidden defect, (2) diminution in the value of those Defective Vehicles once the defect has become public and because of the nature of the required repair on the vehicles, (3) loss of use of the vehicles and associated costs, such as, without limitation, costs of rental or replacement vehicles, (4) punitive damages based on the Defendant's fraud and/or intentional non-disclosure, (5) inconveniences associated with the recall, including the timing and protocol of the recall, and for (5) aggravation and stress associated with driving Defective Vehicles that are a public health hazard;

f.  A declaration that the Defendant must disgorge, for the benefit of Plaintiff and Class members, all or part of the ill-gotten funds it received from the sale or lease of the Defective Vehicles, or must make full restitution of all funds paid by Plaintiff and Class members;

g.  An award of all attorneys' fees and costs allowed by law;

h.  An award of pre-judgment and post-judgment interest, as provided by law;

i.  Leave to amend this Complaint to conform to the evidence produced in discovery and at trial, and such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 28, 2015        By:     */s/ Benjamin L. Bailey*_____
                                          Benjamin L. Bailey (WVSB # 200)
                                          bbailey@baileyglasser.com
                                          Eric B. Snyder (WVSB # 9143)
                                          esnyder@baileyglasser.com
                                          Jonathan D. Boggs (WVSB # 7927)
                                          jboggs@baileyglasser.com
                                          Robert P. Lorea (WVSB # 7476)

rlorea@baileyglasser.com
Katherine E. Charonko (WVSB # 11647)
kcharonko@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile: 304-342-1110

*Counsel for Plaintiffs and the Proposed Class*